That brings us to our last case on the argument calendar today. That's Haslinger v. Westchester County. Thank you. Thank you. May I please the court? Yeah, I'm a clock. So just hold on, Mr. Padilla. All right. So, Mr. Padilla, you have ten minutes, but you reserve two minutes for rebuttal. You may proceed. Yes. May it please the court. My name is Alexis Padilla, and I represent the appellant, Kenneth Haslinger. Your honors, the constitutional, appellant's constitutional right to be free from conditions that pose an excessive risk to his health and safety was violated. When jail officials recklessly put him in the same housing unit with a person who they knew or should have known posed an excessive threat to his safety. I didn't know he posed an excessive threat. All he said was that he had a little beef, I think is what he said, right? That's what he told Officer Hayes. He was asked if there was anyone who posed a threat to his safety. He then said, yes, I have. He used the term beef in his deposition. It's unclear if he used that exact term when he was speaking to the intake officer. But even if he said to her, I have a beef, a beef is a street term for an ongoing dispute. If a person has an option should be that this is someone who is going to physically assault you. When it's when when the answer to the question, is there someone who poses a threat to your safety is yes. And you give a full name and you say, me and this person have a beef. And I would also note that there's language in the record that indicates that he said that he had been threatened by this individual. Where's that? That's in the assistant warden's grievance appeal denial letter. That's appendix 132. He says that as far as the incident, you told the officer you felt threatened by a person who was not incarcerated in our facility at the time you were processed. So that being part of the record, he gave a full name. He said, I have a beef with this guy. And he said that he'd been threatened by him. I don't know how he can be obligated to have to give more. It occurs to me that there's a point where it runs up against his right to not incriminate himself, right? I mean, in this instance, he's coming into the jail on a domestic violence case. The person threatening him is related to the alleged victim in the domestic violence case. If he has to give a full in-depth detailed- You don't have to give a full in-depth, but you could say this individual has beat me up in the past. This person has threatened me. I'm going to ask your adversary about this reference to feeling threatened. But you don't have to give every detail to say something more than I have a beef or dispute. Even if you consider that to be a street term, I think you would be suggesting that anyone then walking into a prison could get a whole list of people that they have, quote unquote, beefs with. And the prison, in order to avoid a 14th Amendment violation, would have to put all those people on the 20 people. Who I have beefs with on the outside. If they ever come into the jail, I don't want to be with any of them. And you would say it would be a 14th Amendment violation for them not to put all 20 of those people on a list? No. I don't know that that's what happened here, though. There's degrees of beef, right? I know, but he didn't articulate the degrees of beef as far as I could tell from the record. And if you want to sue them for a 14th Amendment violation, your client has to have put them on notice that it wasn't just a beef, but that it was sufficiently serious that it would warrant a separation order. That's the standard for delivering indifference. So, I mean, I guess another way of asking Judge Bianco's question is, was there any evidence that the intake staff knew that his family had been threatened? They had been stalked. It was over a woman. Like, is there any of that? Is there any evidence that that was in front of who was doing intake? No. Mr. Hasslinger did not testify at his deposition that he offered that type of information. So how do we have a limiting principle that does not overly encompass things that aren't severe threats with something that is? I mean, I think there might be a line where we can say they were given enough notice, but I'm asking for help from you because we would have to write something where that line is. Well, I think what's key here is that he was asked within the context of the intake process. He's asked by a jail official specifically, is there anyone who poses a threat to your safety? Okay, but they ask that for everybody, right? Within the jail. And, again, I'm asking for help. Like, if we write something, we have to write words down that provides guidance to people. What is the limiting principle? Is it just enough to say, I have a beef with someone, or does there need to be something more? I think the something more here is that he gave the full name of the individual. I think the case law that refers to vague and stale threats, if you look at those cases, they generally refer to situations where- Just because he gives a name doesn't mean it's a serious risk to him. I gave you an example of 20 people on the outside, but let's take the people on the inside. Suppose a guy comes into the jail and says, there's 25 people in the jail who I don't want to be put with. I feel, in response to your question of who poses a threat to my safety or who I feel threatened by, these are the 20 individuals. Your position is him naming those individuals and saying I feel they jeopardize my safety would require the jail to put 25 people in the jail on a list that he has to be kept separate from. Isn't that what you'd be saying, Joss? I would say that happens all the time, your honor, in the context of gangs. Okay, but that's an additional detail, right? If he had said, I have a beef with this guy, he's a member of a rival, he's a member of a gang, then that's a different argument. But we don't have him saying, this individual that I'm giving the name of is a member of a gang and he's violent. And he's threatened me, or he's beat me up in the past. We don't have any of that. We don't have any mention of a gang, right? What we have here is an individual who had threatened my client on social media. And my client- No, no. It's really, what is in the record to indicate what was said to Officer Mays at the time of intake? Well, that's in Opponent's deposition, that he said to Officer Mays that they hadn't had any physical altercation in the street, that the threats had occurred through social media. Respondents have used that to kind of downplay the threat, as if in 2023 people don't make very real threats over social media. I mean, this is no different today than picking up the phone and calling someone and saying, you know, making a threat over the phone. If someone calls you and makes a threat over the phone, you take that seriously. I don't see how it's any less serious just because someone did it over Facebook or the Internet. I think what we're arguing, or what we're trying, we need some help from, is how did they know how severe the threat was? Like, what was it? And it seems to be that your position is the mere utterance of it is sufficient. It is. It is. Because in the jail context, first, people don't ask for protective orders lightly. Keep separate orders generally will mark you in jail, right, as someone who is asking for protection. It's a step below asking for protective custody. In the jail culture, generally people don't do these things. So when, in response to the very specific question of is there a person who poses a threat to your safety, a person says yes and gives a full name. I just don't understand how a jail needs more in order to be on notice that there's a threat to this person's safety. Where in the record did he testify that he told Officer Mays this person had threatened me on social media? Do you know where that is? I didn't see that in the briefs. If you look at the 56.1 statement, that's appendix 141. Right. It says that paragraph 11, the arguments that plaintiff had with Mr. Rooney prior to being incarcerated at the jail were not in person but via telephone and via Facebook. Okay, but that doesn't say that he told that to Officer Mays, right? Yeah. Well, that's based on his testimony from the deposition transcript where- And that is what I told Officer Mays. Just to go back to Judge Sullivan's point, that's the critical factor on deliberate indifference. Not what the history was, but what was told to Officer Mays. Sure. Are you sure in the deposition that he said, I told Officer Mays that I had been threatened on social media? Or is that just him describing his own background with the person? I think, to be honest with you, Your Honor, at the deposition, he didn't really remember what he had said specifically to her. And that's part of the issue with this term street beef, right? Because he uses that term at his deposition. That's the first time that it comes into the record, right? The most contemporaneous description of what he said to her is actually in the grievance denial letter. Where it's acknowledged that he told her that he had been threatened. I see he had problems, right? Okay. On the issue of whether it's a policy or not, obviously Officer Mays is not a policy maker. The policy seems to be ambiguous, saying you're not required to do this, but it doesn't say don't do this. So what's your response? In order for you to prevail here, you'd have to establish the policy, right? Again, I would point to the denial letter, the grievance denial letter. Where he says the department had no way of placing a keep separate with someone who is not presently incarcerated in our facility. That comes from the assistant warden. I would say that this is the kind of case that Monell exists for. It only exists if, look, if a prisoner gave chapter and verse about who posed a threat. Says they may not be here now, but they might be in soon. And I'm telling you, you've got to keep me separated from this person because I'm a dead man. If they give that kind of detail, then that's a different story about deliberate indifference. Based on this policy of not putting in separations based on people who are not yet in custody. But we're focused here really on what it is that Mays has knowledge of that would put her on notice that there needs to be a separation here. She knows that there's an ongoing dispute? So I'm looking through the records and I don't see what you're referring to about the social media statement. I believe the transcript citation at page 53, line 17 through 19, where he talks about Facebook, threats made on Facebook. In any event, she knew that there was an ongoing dispute. And she knew that there was a threat. And she knew the individual's full name. And within context, this is a guy telling her, I need to be kept safe from this person. While coming into a jail. This is not his first time in a jail. He's actually there on a hold on a federal probation violation. This is not his first time. He's been incarcerated in federal prison. He's been incarcerated in state prison. He's been to jail before. She knows that from looking at his intake information. When he tells her, yes, there's this person who I'm very much afraid of and would like to be kept separate from. What more does he need to say? I just don't understand. What if he had done something illegal to this person? Like assaulted him or something like that? And the whole reason that he needed to be protected is because the guy was out for retaliation. Is he supposed to admit to the intake officer that he shot the guy or that he stabbed him once? And that the guy wants revenge now? Well, I guess the issue is what is deliberate indifference on the part of an officer. And you, I guess, are asking us to adopt a rule that anytime somebody says, hey, I gotta be separated from this person. That prison officials have to take that at face value. And if they don't, then they're going to be liable for a 14th Amendment violation. I think where they're told that there's a threat to the safety. It's not. If a person comes to a prison official and says, I need to be separated from this guy. But they can't even inquire, I think is what you're saying. That it's enough for the person to say it? They can inquire. I just don't think that the person is obligated to tell them anything more than this person has me under threat and I need to be protected from them. I mean, I just don't understand where they're entitled to more.  Well, you've got two minutes for rebuttal. We'll hear now from Mr. Aiden. Am I pronouncing that right? Yes, your honor. Okay, Mr. Aiden. Good morning, your honors. May it please the court. Justin Aiden for the County of Westchester. You asked how the court draws the line in this case. And this court has already. The Morgan decision, I think, clearly delineates the difference in what information is necessary. In Morgan, you had an instance where an inmate was assaulted. And you had two different classes, essentially, of defendants and correction officers. There was one group who the inmate went to right before recreation and said, That inmate over there threatened me. I think he's going to beat me up during recreation. I need to be kept separate. They didn't do anything. He was beaten up during recreation. And this court said the threat was not specific enough. There was not specific enough information. And those defendants were dismissed out on summary judgment, which this court affirmed. You had a separate group that knew the inmate who got beat up had said, At my prior facility, I cooperated with prison officials about gangs. This guy's in one of the gangs I gave information on. He's threatened to beat me up for being a snitch. There, there was specific information underlying the threat. And this court said, They're still in. That case goes forward to a jury. So that line has been drawn already. There has to be specific information. I'm baffled about this policy of not separating folks or not having a flag. In this courtroom, when we list a matter that we're recused from, We don't then have to go do it again. Why is not having a computer system that can flag problems that are very typical to other computer systems that we see in the other world enough in this case? What I can say from what is in the record is that there was an ability, And they did enter a note about the allegation that there was a beef with this other individual. Now, he's not in the jail at the time. So, essentially, the keep separate is the fact that one person's in jail and one person isn't at that point. So, basically, you're saying that if you have a street beef with someone, You better hope that you're the second person arrested, right? Because the jail will have a policy of washing their hands from the obligation Because they don't have a separation policy for you As long as one of you is out at the time that it was recorded in the intake. I'm not saying that it's impossible to have a situation, But where the only thing is, I have an issue with somebody in the outside. It's not necessarily enough. It seems like from what you're saying, though, Is that there is no way to separate someone prospectively To put something in the computer, and he points to the denial letter, Which essentially, he says that we don't do this. And maybe there was a note put in the system, But obviously, that note didn't prevent them from being put together, right? So, is there an ability to separate something, put a name into the system? So, let's say he had said, this person's in a gang, they beat me up previously. Does the jail's computer system allow them to make sure that when that person comes in, They're going to be separate, or it does not? I don't know the answer to that, unfortunately. That was not something that really came out during discovery. What came out was, this has never come up before. So, it's entirely possible that the grievance coordinator said, You can't do it because, he assumed we couldn't because we haven't done it before, But nobody is aware of anybody ever asking for a keep separate With somebody who wasn't at the jail already. Well, I mean, how is someone in intake supposed to know who is in jail? They can look them up in the system, and that's what happens. What I'm saying is, how is the requester supposed to know? When the requester says, I have a concern with someone, I have been threatened by someone, Their name goes into this field that apparently is completely meaningless, Because you all have a policy, or the county has a policy, Of not separating them unless they are both, Unless the complainant comes in at a later point in time. How is that not indifference? Well, it's not, so the requester, when they come in, They may not know if somebody is in jail or not, But that's why they say, this is somebody I have an issue with, And part of the process is, they do look up. They will look them up to see, is this person actually here or not? What about the fact that the intake officer was told that this person is likely to come in? What about that? Well, I think it again goes to the fact that there's not any real information about the threat, Even if- Well, so I think there's two issues we have to grapple with. One is the existence of a policy that does not keep people separate If the complainant is the first one, Or the person who feels threatened is the first one in, right? That's one problem. And then the other problem was, Did the plaintiff in this case give enough information To put people on notice that they needed to do something, And when they failed to do it, was it deliberately indifferent? So I'm actually interested in the first part right now, Like the not having a separation policy. I mean, I think that the easiest answer for that first part is, If the court goes to page 141, the last page of the appendix, Plaintiff admits that there's no count, That the jail does not have a non-association policy That applies to individuals who are incarcerated. Isn't that the problem? Isn't that the policy? They have a policy of not separating people? No. They do not have a policy governing this situation. So what you're saying is that if somebody came in, A new prisoner came in, and at intake said, I have a real problem with somebody, And I know he's got a warrant out for him, And he is going to kill me if he sees me. There is an ability for an intake officer to make a note of that And take preventive steps? I know from the record that there is an ability to note that in the intake system. I do not know the exact capabilities. The problem may be they may note that in the inmate in front of them's file, But when the person comes in, there's no cross-referencing of that. If you put a note in this Mr. Hasslinger's file, He has a beef with this inmate, this person who's out on the street, And that person comes in, how is that note in his file going to come to the attention Of the person doing intake on the person he has the beef with? Apparently, it's not going to happen, right? I cannot answer that. The extent of the capabilities of the system in cross-checking that is not in the record. Conveyed to the jail, they've got to look into that, Because these hypotheticals that were presented may not have come up before, But regardless of whether there's liability here, There should be a system in place, an ability at least, When someone gives sufficient information regarding someone who's out on the street To make sure that when that person comes in, they're not put together, right? I would certainly... I would certainly expect that there is some sort of capacity in the system for this, Because I can't imagine, I mean, you have situations where... There's a note saying that not being in the facility could not be placed. I mean, there is, at least it is being conveyed to and defended by, We don't have a means of doing that, so even when we give you the name, There's nothing we can do, because the guy wasn't an inmate at the time we looked him up. We have a statement from somebody who's not doing intake, Who reviews the grievances, who says, we couldn't do that. But I don't know, you know, there was not really discovery on what the actual system itself has. I do, you know, there are situations where there's gang violence and people get arrested. Who's Francis Del Grosso, the assistant warden? He's an assistant, yes. The department had no way of placing a keep separate with someone who was not presently incarcerated in our facility. Why isn't that a policy? Right, why isn't that saying we do not... We are unconcerned with street beefs, If the person who feels threatened is the first person arrested or detained by us. It's not saying that we do not have a method to track and to make determinations when somebody comes into custody. It's at best saying we don't have something that says, keep this person in jail away from this person who's not in jail. I don't know how that cuts against you, because now I'm hearing, I thought you guys were going to say you couldn't do it. And so therefore we weren't deliberately indifferent. Now you're saying we could do it and we didn't. What I'm saying here is from the record, I do not know the exact capabilities of the elite system. It was not- Your position is even if this person were in custody in the jail, that what he gave was not enough information to be placed under this Morgan case that you're citing. Correct. You're saying it was just nonspecific enough to constitute deliberate indifference because of the lack of information regarding the nature of the threat. Correct. And as Your Honor pointed out earlier, the problem is you could have an inmate come in and say, you know what? I really don't like this cell block. It's too noisy. It's too close to record. Oh, I've got a problem with these people here. This guy right here. Here's his name. He threatened me. Judge Bianco asked you a fair and sensible question. That is a preposterous response. There is no way that somebody would know which cell blocks were problematic before they got in. We have a hard job that we're trying to do that's being very, very dismissive. Can you please answer the question about whether or not we have, whether or not being told of a mere threat in this instance was enough? And what do we do about the fact that they knew of the threat and it's ambiguous as to whether or not they could have had a policy to do something about it or not, but they chose not to? Your Honor, the threat was definitely not, what they were told was definitely not enough. And this Court's decision in Morgan makes it clear just saying, I have an issue with this person. He threatened me is not sufficient detail. And I would note, and as counsel said, this client's been in and out of the jail. We do get a lot of repeat visitors at the jail, so people do know where they are. And once they're there, they can also request keep separates as things arise during their time in the jail. But if you have a system that says, as long as they say, here's the name of somebody, I feel threatened, you have to do a keep separate, it can create a big problem if an inmate does want to move their cell block or if they want to move somebody else. Move is not an intake, right? Like move is not an intake, right? Like an intake, they have not, they don't know where they're going to be. So I just want to make sure that the gravity of the decision that we're having to do is being not dismissed with- No, I'm certainly not meaning to dismiss. I'm saying it's the same issue at intake as it is while they are in custody in the jail, as to what you need to be told in order to have a keep separate. If all you have to do is come in and say, you know, John Smith threatened me, and that's it, why would that be any different if two weeks into your time in jail you say, John Smith and my cell block threatened me? I mean, there still needs to be something more, and that's what the courts have held, because you have to have some basis for them to really evaluate. There was nothing here other than, you know, I have a beef. I believe Officer Mays testified, you know, he used the word street beef during the intake. There is no testimony that Officer Mays was told any details beyond that. Right, because you're disagreeing, I think, with Mr. Padilla's characterization of the deposition testimony. Is that right? Yes, and I believe if you go to page 88 of the appendix, and it's what exactly did you tell Officer May, I told her I needed to be kept away because I assumed of the little beef we had from prior being in jail. That's what I told her. Why isn't that a question of, why isn't that an appropriate issue for summary judgment then, if there's two competing versions of what Officer May knew? Because there aren't two competing versions. Officer Mays said he told me street beef. The plaintiff in his deposition uses the word little beef. All he says in opposition to summary judgment is, I don't believe I told her street beef, but never, and the district court pointed this out, never says what he thought he told her. So there is no- So it led to a conclusion that it was a physical threat. Right. Right. There is nothing in there that says that there was exploration in the deposition as to what was the problem, which led into the discussion about the social media issues and that. But there was nothing put forward by the plaintiff in opposition to summary judgment that said, I told Officer Mays all of these factors to support this claim. Thank you. Thank you. We'll hear from Mr. Padilla for two minutes. Your Honor, I just want to speak to Morgan. Morgan is a case where you have a cooperator who has provided very, very specific detail and has even gone as far as to say, I think I'm going to be attacked at a certain time at a certain place. I think that that goes well beyond where the standard should be. I mean, it's great that the plaintiff in Morgan was able to provide all of that detail, but a person shouldn't have to be able to provide all of that detail. He gave the name of the individual, the gang. He talked about his prior cooperation and the motivation- In Morgan. In Morgan to want to injure him. I think the issue is what was said here. And here, you suggested before that in his deposition, your client said that he told Mays at intake about the Facebook and social media threats. That there had been threats on social media. That was my understanding. There was discussion about the nature of the disagreement that your client had with Rooney, but nothing to indicate that that was conveyed to Officer Mays at intake. It may be an issue of fact, Your Honor. Well, I mean, no. There's an absence of fact. And so, I mean, I'll look again at the deposition. Maybe you should as well. But you represented a minute ago, or a few minutes ago, that your client said that he told Mays about the Facebook threats, right? Is that your recollection? I may have misquoted the record. I was relying on the 56.1 statement that referred to telephone and Facebook arguments. But my recollection, having been there, was that he did mention to her, or he did mention in his deposition, that he told her that he had not actually had any physical altercation with Rooney. That the nature of their beef thus far had been limited to online threats. That was how I recall it. If I have misstated the record, I apologize. If I may, I wanted to go back to Morgan, though, for a second, because I want to differentiate where, in Morgan, he's not in the intake process being asked by a jail official outright, is there a threat to your safety? He's coming forward and basically asking jail officials to pay attention. In this context, the plaintiff is being asked outright, is there a threat to your safety? For the purpose of determining whether a keep separate order is appropriate. When he gives an affirmative answer, what more does he have to give? And a full name of an individual. He didn't give something vague like, oh, yeah, these guys from such and such street want to beat me up because I have a beef with the guys from that street, or something like that. Those are the circumstances where I understand threats being vague. When you say, oh, yeah, I don't like the guys from Bedford-Stuyvesant, so I can't be with anybody from Bedford-Stuyvesant, or something like that. But to give the specific name of an individual, and to say that that individual is in and out of the jail, and I need to be kept separate from that person, I just don't know what more you need to say in order to trigger your constitutional right to be protected. We will reserve the decision. Thank you both. That concludes the arguments on the argument calendar today. We have one other case on submission. We'll reserve on that as well. So let me thank everyone, and let me thank the corporate deputy. Mr. Beard, you may adjourn the court. Court is adjourned. Thank you.